UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARQUIS CRACRAFT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-02398-MPB-KMB |
| ) | |
| DAVID WEEKLEY, ) | |
| INDIANAPOLIS METROPOLITAN POLICE ) | |
| DEPARTMENT, ) | |
| COREY SHAFFER, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Marquis Cracraft brought this action against Officers David Weekley and Corey Shaffer, both in their individual and official capacities, and the Indianapolis Metropolitan Police Department ("IMPD") following an encounter with Officers Weekley and Shaffer on the Indianapolis campus of Ivy Tech Community College of Indiana ("Ivy Tech").[1] (Docket No. 26, Amended Complaint ("AC"). Mr. Cracraft alleges that Officers Weekley and Shaffer, while under the employment or control of IMPD, racially profiled and unlawfully stopped him in violation of his constitutional rights. (*Id.*). He brings claims for violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 and under Indiana law for false imprisonment. (*Id.* at ECF p. 2, 4–7). IMPD and Officer Shaffer filed a Motion to Dismiss on March 15, 2023, (Docket No. 34) and Officer Weekley filed his Motion to Dismiss on April 24, 2023, (Docket No. 48). Due to the extensive overlap in facts and legal issues, this Court consolidates the

---

[1] Mr. Cracraft initially included Ivy Tech among the defendants. (Docket No. 26). Ivy Tech filed a Motion to Dismiss on March 15, 2023, (Docket No. 30), which Mr. Cracraft did not oppose, (Docket No. 57). The Court dismissed Ivy Tech without prejudice on May 12, 2023. (Docket No. 60).

1

Motions to Dismiss and considers them together. Mr. Cracraft, in his response briefs, voluntarily dismisses Count II (Intentional Infliction of Emotional Distress); Count III (Negligent Infliction of Emotional Distress); Count IV (Negligent Training & Supervision); and Count V (Respondeat Superior). (Docket No. 50 at ECF p. 2; Docket No. 62 at ECF p. 2). Mr. Cracraft further dismisses his "official capacity claims." (Docket No. 62 at ECF p. 2). Thus, Counts II through V and the official capacity claims against Weekley and Shaffer are dismissed with prejudice. For the reasons that follow, Count I's unlawful search and seizure, equal protection, and *Monell* claims are dismissed. These claims are dismissed without prejudice and with leave to file a motion for leave to file an amended complaint no later than September 8, 2023, if Mr. Cracraft believes an amended complaint is maintainable consistent with this opinion and Federal Rule of Civil Procedure 11. If no motion for leave to amend is filed by that date, or if any such motion is denied, the dismissal of Count I will convert to with prejudice. In view of the dismissal of all of Mr. Cracraft's federal claims, the Court is inclined to decline supplemental jurisdiction over the state law claim set out in Count VI but will not formally dismiss that claim without prejudice until it can rule on a motion for leave to amend the federal claims.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Plaintiff as the non-movant. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

Mr. Cracraft is an African-American student at Ivy Tech. (AC, ¶ 12). On July 28, 2022, Mr. Cracraft arrived at Ivy Tech's campus in downtown Indianapolis, Indiana carrying his laptop and entered the campus library. (*Id.* at ¶¶ 13–14). Sometime later, Mr. Cracraft left the library

again carrying his laptop. (*Id.* at ¶ 15). As he exited the library, Officer Weekley, an employee of Ivy Tech under the control of IMPD, "detained" Mr. Cracraft. (*Id.* at ¶¶ 4, 15–16). Officer Weekley, who is Caucasian, was in full police uniform, which Mr. Cracraft believed included a gun and handcuffs. (*Id.* at ¶¶ 16, 22(b)).

Officer Weekley's appearance, demeanor, and statements led Mr. Cracraft to feel no choice other than to submit to his authority. (AC, ¶ 17). During the detainment, Officer Weekley accused Mr. Cracraft of stealing the laptop and disbelieved his statements that the laptop was his. (*Id.* at ¶ 18–19). While continuing to detain Mr. Cracraft, Officer Weekley called Officer Shaffer, a Caucasian IMPD employee for assistance. (*Id.* at ¶ 20). Officer Shaffer arrived in full police uniform including a firearm and handcuffs. (*Id.* at ¶ 22(c)). Like Officer Weekley, Officer Shaffer's appearance, demeanor, and statements led Mr. Cracraft to feel no other choice than to submit to his authority. (*Id.* ¶ 21). Further, Mr. Cracraft was blocked from leaving by the Officers' bodies and vehicles. (*Id.* at ¶ 22). During this time, the Officers asked Mr. Cracraft questions and then took possession of and physically inspected his laptop. (Docket No. 50 at ECF p. 6–7; Docket No. 62 at ECF p. 9).[2] Mr. Cracraft did not initially answer the Officers' questions but began answering under the belief that he had no choice. (Docket No. 62 at ECF p. 5). Officer Shaffer informed Mr. Cracraft that he was on Ivy Tech's private property. (Docket No. 50 at ECF p. 6–7; Docket No. 62 at ECF p. 9). After "some time," the Officers determined that Mr. Cracraft had not stolen the laptop. (AC at ¶ 25). Mr. Cracraft was then permitted to leave. (*Id.*).

---

[2] As discussed herein, "[a] party appealing a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012).

3

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to file a motion to dismiss for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, courts construe complaints in the light most favorable to plaintiffs, accepting as true all well-pleaded facts in the complaint and drawing reasonable inferences in favor of plaintiffs. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with the additional facts set forth in the plaintiff's brief opposing dismissal, "so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). A court may not dismiss a complaint unless it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claims to entitle them to relief. *Ross v. Creighton Univ.*, 957 F.2d 410, 413 (7th Cir. 1992). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.     ANALYSIS

The Court shall address Mr. Cracraft's Fourth Amendment unlawful search and seizure claim, Fourteenth Amendment claim, *Monell* claim against IMPD, and his false imprisonment claim in turn.

### A.     Count I: Fourth Amendment Claim

Count I asserts claims against Officers Weekley and Shaffer for unlawful search and seizure in violation of the Fourth Amendment. In sum, Mr. Cracraft alleges that by unlawfully

detaining him and examining his computer these officers unconstitutionally seized and searched him.

Officers Weekley and Shaffer argue that Mr. Cracraft has not plausibly alleged a Fourth Amendment violation because Mr. Cracraft's encounter did not amount to a search or seizure or, if so, it was consensual. At most, the officer's actions constituted a reasonable investigatory stop. Without conceding the constitutional violation, the officer defendants further argue that qualified immunity applies. (Docket No. 35 at ECF pp. 3–8; Docket No. 49 at ECF pp. 9, 19–21). Mr. Cracraft replies that he reasonably believed he was not free to leave, and therefore the encounter was not consensual. (Docket No. 50 at ECF p. 6; Docket No. 62 at ECF p. 6–7). He contends that carrying a laptop openly does not create reasonable suspicion for an investigatory stop and that the encounter was therefore an unlawful stop. (Docket No. 50 at ECF p. 4; Docket No. 62 at ECF p. 9). He further argues that the officers cannot receive qualified immunity protection because unlawfully restraining a person is in clear violation of an established right. (Docket No. 50 at ECF p. 5; Docket No. 50 at ECF p. 8).

The Fourth Amendment protects the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To state a claim for a Fourth Amendment violation, a plaintiff must plausibly allege that: (1) there was a search or seizure; and (2) the search or seizure was unreasonable. *Angara v. City of Chicago*, 897 F. Supp. 355, 358 (N.D. Ill. 1995).

1. **Count I: Unlawful Seizure**

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

"[T]he appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436 (1991). *See also United States v. Holly*, 940 F.3d 995, 1000 (7th Cir. 2019). This inquiry requires analyzing the totality of the circumstances. *Hicks v. Cook Cnty. Sheriff's Off.*, 2020 WL 1322844, at *12 (N.D. Ill. Mar. 19, 2020). Such factors include,

> whether the encounter occurred in a public or private place; whether the suspect was informed that he was not under arrest and free to leave; whether the suspect consented to or refused to talk to the investigating officers; whether the investigating officers removed the suspect to another area; whether there was physical touching, display of weapons, or other threatening conduct; and whether the suspect eventually departed the area without hindrance.

*United States v. Scheets*, 188 F.3d 829, 836–37 (1999).

Even viewing the facts in the Amended Complaint in the light most favorable to Mr. Cracraft, the Court finds that he has not stated a claim of unlawful seizure in violation of the Fourth Amendment. First, the Amended Complaint is replete with conclusory legal language like "detained" and claims that due to the officers' "appearance, demeanor, and statements Cracraft felt that he had no other choice than to submit to [the officers'] authority." (AC, ¶¶ 16–17, 21–22). Mr. Cracraft's use of these (and similar phrases) fails to provide specific grounds to establish those legal claims. *See, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009) ("[C]ourts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory statements" without "providing specific facts to ground those legal claims."). For instance, Mr. Cracraft does not allege that Officers Weekley or Shaffer made any statement or allege any facts related to their demeanor, other than Officer Weekley refused to believe Mr. Cracraft's statement that the laptop was his. (AC, ¶ 19).

Compared to the above-listed "totality of the circumstances" factors, Plaintiff's allegation that he felt he could not leave is not reasonable. *See United States v. Holly*, 930 F.3d 995, 1000

(7th Cir. 2019) (providing the Fourth Amendment analysis does not turn on what Plaintiff may or may not have felt it turns on whether "a reasonable person would not feel free to leave."). First, Mr. Cracraft alleged he was stopped just outside of Ivy Tech's library—a public place. (AC ¶¶ 15–16). Second, there are no allegations as to whether Officer Weekley and, later, Officer Shaffer advised Mr. Cracraft if he was free to leave. Third, Mr. Cracraft alleges that he answered Officer Weekley and Shaffer's questions without an order that he do so. (*See id.* at ¶¶ 19, 24–25). On response, Mr. Cracraft argues these answers were not voluntary, but coerced because "he felt he had no other choice," but, again, the Complaint lacks insufficient factual allegations to determine whether Mr. Cracraft's feelings of coercion were reasonable. Fourth, there is no allegation that the defendant officers removed him to another area, *e.g.*, ordered him inside the library; rather, a plain reading suggests the incident occurred all in the same spot. (*See id.* at 16–25). Fifth, there is no allegation of physical touching or threatening conduct and, with regards to display of weapons, Mr. Cracraft merely "believed" Officer Weekley's uniform included a firearm and cuffs whereas Officer Shaffer did display weapons on his person. In any event, the mere existence of a uniform does not mean a seizure occurred. *See, e.g.*, *United States v. Goddard*, 491 F.3d 457, 461 (D.C. Cir. 2007) ("the fact that officers wore [police] gear, including guns and handcuffs, does not mean that a [*Terry*] stop occurred"). Finally, Mr. Cracraft acknowledges the encounter ended after it was confirmed that the laptop was not stolen, (AC at ¶ 25), meaning he "eventually departed the area without hindrance." *Scheets*, 188 F.3d at 837.

Likewise, Plaintiff's bare assertions that he "was blocked into a confined area by surrounding vehicles, including Officer Weekley and Officer Shaffer's," (AC, ¶¶ 22(d)) and "Officer Weekley's and Officer Shaffer's bodies," (*id.* at ¶ 22(e)) is similarly unpersuasive. In *United States v. Folks*, 998 F.2d 1016 (7th Cir. 1993) (unpublished), the Seventh Circuit rejected

7

a similarly bare assertion that the "manner of the [officer's] approach and the place where the search occurred 'indicated a confinement of [Folks] by the police officers.'" Based on his allegations, the Court cannot plausibly infer that a reasonable person would have believed that he was not free to leave. Significantly, Mr. Cracraft does not include any of the key indices of a seizure. *See Mendenhall*, 446 U.S. at 554. For example, he does not allege that the officers physically touched him or handcuffed him. There were only two officers present, and Mr. Cracraft does not allege that they threatened or used language or a tone of voice indicating that Mr. Cracraft had to stay and comply with the officers' requests.

Ultimately, without more, Mr. Cracraft's claim that he was subject to an unlawful seizure to which any consent he gave was involuntary does not meet the plausibility standard based on the facts as alleged.

**2. Count I: Unlawful Search**

As part of Count I, Mr. Cracraft also alleges that he was subject to an unlawful search in violation of the Fourth Amendment. (AC ¶ 33). The Complaint itself does not further allege the details of any search. In Mr. Cracraft's responses to the Defendants' motions to dismiss, he further alleges that Officers Weekly and Shaffer "demanded to search his computer, and did not permit [him] to leave until his computer had been [physically] examined [by Officer Weekley while Officer Shaffer continued to detain him]." (Docket No. 50 at ECF p. 7; Docket No. 62 at ECF p. 10).

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). A warrant is generally required for searches of computers. *Horton v. California*, 496 U.S. 128, 142 n. 11

(1990). However, a truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a "search" for Fourth Amendment purposes. *Arizona v. Hicks*, 480 U.S. 321, 328 (1987).

The Defendants do not address the plausibility of these new allegations in Plaintiffs' responses. Officer Shaffer and the IMPD do not acknowledge the new allegations at all and Officer Weekley overlooks the previously discussed controlling precedent when he argues that this Court should decline to consider the new factual allegations in Mr. Cracraft's response motions. However, again, Mr. Cracraft's threadbare recitals do not save him. A physical examination suggests, at most, that Officer Weekley looked at the outside of the computer (i.e., what he was already exposed to) and did not search nor was otherwise exposed to any materials on the computer. Therefore, without more, Mr. Cracraft's claim that he was subject to an unlawful search does not meet the plausibility standard.

**B.     Fourteenth Amendment Claim**

The Defendants argue that Mr. Cracraft fails to state a claim for racial profiling under the Equal Protection clause of the Fourteenth Amendment. (Docket No. 35 at ECF p. 6; Docket 49 at ECF p. 18). They argue that Mr. Cracraft does not allege any discriminatory purpose or intent and instead relies entirely on a racial difference between Mr. Cracraft and Officers Weekley and Shaffer.[3] (Docket No. 35 at ECF p. 6; Docket No. 49 at ECF p. 18). Mr. Cracraft responds that because he is African American and the Officers involved were white, no explanation was given for stopping him, and no other student was similarly stopped, racial profiling can be inferred.

---

[3] Officer Weekley also argues that Mr. Cracraft failed to allege a Fourteenth Amendment Equal Protection claim in any form because his Fourth and Fourteenth Amendment claims are not meaningfully differentiated. (Docket No. 49 at ECF p. 17). Because the Court finds that, even if differentiated, Mr. Cracraft has failed to state a claim under the Equal Protection Clause, the Court need not address this argument.

(Docket No. 50 at ECF p. 8–9; Docket No. 62 at ECF 13–14). He asserts this is sufficient to set forth an Equal Protection claim.

"Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011). To establish a prima facie case of discrimination under the equal protection clause, a plaintiff must show that: (1) he is a member of a protected class; (2) he is otherwise similarly situated to members of the unprotected class; and (3) he was treated differently from members of the unprotected class. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Such claims also require proof of discriminatory intent. *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

Here, Mr. Cracraft has failed to allege all elements of a racial profiling claim under the Fourteenth Amendment's Equal Protection clause. Mr. Cracraft's Amended Complaint notes his race, African American, and the Officers' races, Caucasian, then states that he was racially profiled. (Docket No. 26 at ECF p. 2–4). That he and the officers are different races is the sole factual basis of Mr. Cracraft's claim stated in his Amended Complaint. However, this allegation is insufficient to render his allegation plausible. Racial profiling neither requires a difference in race between officers and a person being investigated nor can racial profiling be assumed to be present in such a police-civilian interaction. *See Ustrak v. Fairman*, 781 F.2d 573, 576 (7th Cir. 1986) ("It would be insulting and unfair to Warden Fairman to presume that because he is black any unequal enforcement of prison regulations that hurts a white prisoner is the product of racial prejudice"). This allegation is thus conclusory and fails to meet the plausibility pleading standard.

Mr. Cracraft attempts to correct this pleading deficiency by asking the Court to infer that he was treated differently from other students of a different race. However, he provides no

10

factual basis that would allow the Court to make such an inference. He does not state that there were other students nearby, the race of any other passersby, or whether they were behaving similar to him on that evening. Though the Court draws all inferences in the non-movant's favor, it cannot make the leap requested by Mr. Cracraft given the dearth of factual allegations in Mr. Cracraft's Amended Complaint. Mr. Cracraft has therefore not sufficiently alleged that he was treated differently from non-African American students at Ivy Tech. *See Angie's List, Inc. v. Ameritech Pub., Inc.*, 2010 WL 2521722, at *2 n. 2 (S.D. Ind. June 15, 2010) ("The allegations of a complaint must contain enough factual matter to plausibly suggest that each element of the claimed cause of action actually exists, not that the element's existence is possible, conceivable, or that facts exists that are merely consistent with the element's existence.").

Because the Court cannot simply infer the existence of any individuals treated differently than Mr. Cracraft or assume racial animus based solely on the race of Mr. Cracraft and the Officers, Mr. Cracraft has not plausibly alleged that the Defendants violated his Fourteenth Amendment's Equal Protection Clause.

C.     **Count I: *Monell* Claims Against IMPD**

As an initial matter, IMPD is not a separate, suable entity. *See, e.g.*, *Perry v. Thomas*, 2011 WL 693622, at *4 (S.D. Ind. Feb. 18, 2011) ("The IMPD is not a suable entity and thus not a proper party in this action.") (citations omitted); *Hayes v. City of Indianapolis*, 2009 WL 700232, at *1 n. 1 ("The IMPD is not a suable entity under 42 U.S.C. § 1983 and the claim against it is actually against the City . . ."). It may be assumed that the improper naming of the IMPD is the equivalent of suing the City of Indianapolis. *See Best v. City of Portland*¸ 554 F.3d 698, fn* (7th Cir. 2009).

11

The City argues that Mr. Cracraft has failed to establish its liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for two reasons: (1) there was no underlying deprivation of constitutional rights, and (2) the allegations in the Amended Complaint are too vague and conclusory to survive Rule 12(b)(6). (Docket No. 35 at ECF pp. 8–10). Mr. Cracraft responds that his allegations do demonstrate that his constitutional rights were violated by Officers Weekley and Shaffer and that *Monell* liability is properly pled based on his "belie[f] that IMPD has implemented a widespread practice of racial profiling." (Docket No. 50 at ECF p. 9–10).

Under *Monell*, municipalities are persons who may be sued under § 1983. *Thomas v. Neenah Joint Sch. Dist.*, No. 22-2527, 2023 WL 4635053, at *2 (7th Cir. July 20, 2023). However, "[m]unicipalities may be sued only for their own violations of federal law, . . . and cannot be held vicariously liable for the constitutional torts of their employees." *Id.* Further,

> [f]or a Monell claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) []he was deprived of a constitutional right; (2) the deprivation can be traced "to some municipal action (i.e., 'a policy or custom'), such that the challenged conduct is properly attributable to the municipality itself"; (3) "the policy or custom demonstrates municipal fault, i.e., deliberate indifference"; and (4) "the municipal action was the moving force behind the federal-rights violation." All requirements "'must be scrupulously applied' to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability."

*Id.* (citations omitted) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) and *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022)).

The Seventh Circuit has recognized three types of municipal conduct that may satisfy the "municipal action" prong: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir.

12

2019)). Mr. Cracraft's claim is predicated on an unidentified "policy statement, ordinance, regulation, decision, or custom." (AC, ¶ 34). Not only is this sort of vague, broad assertion insufficient to survive a motion under Rule 12(b)(6), but also to the extent Mr. Cracraft attempts a "widespread practice" theory, he "must allege facts permitting a reasonable inference 'that the practice is widespread and that the specific violations complained of were not isolated incidents.'" *Id.* at *3 (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)).

In *Flores v. City of South Bend*, the Seventh Circuit addressed a claim that the City of South Bend was liable under *Monell* for an alleged "*de facto* policy of encouraging or permitting excessively fast driving" after a South Bend police vehicle traveling at 98 miles per hour struck another vehicle killing its occupant. 997 F.3d 725, 728, 733 (7th Cir. 2021). Though reversing the district court's dismissal on another theory of *Monell* liability, the court held that the plaintiff had not shown a "sufficiently specific pattern of conduct to 'support the general allegation of a custom or policy'" through simply alleging "that officers sometimes drive at high rates of speed" and specifying three examples of a single officer speeding. *Id.* at 733. The court noted that "[f]inding otherwise would stretch the law too far, opening municipalities to liability for noncodified customs in all but the rarest of occasions, as long as a plaintiff can find a few sporadic examples of an improper behavior." *Id.* Similarly in *Thomas*, the court held that "allegations of two isolated incidents fail to plausibly allege that the [school district] has a widespread practice of using excessive force to punish students with behavioral disabilities." 2023 WL 4635053 at *3.

Here, Mr. Cracraft has not stated a *Monell* claim against the City. Mr. Cracraft has done no more than allege a single isolated incident of racial profiling and state a belief that there were other instances. Even assuming that this incident was a violation of his rights, he has not alleged

13

any facts supporting his contention that this is a widespread practice. The frequency of the violative conduct in *Thomas* (three instances) or *Flores* (two instances) did not reach the level of a widespread practice, and Mr. Cracraft's allegation (a single instance) has not reached even the insufficient frequencies in *Thomas* and *Flores*. A single instance cannot itself demonstrate a pattern of conduct of a police department and remains insufficiently supported by the Mr. Cracraft's stated belief that there are other instances. Like the allegation in *Flores* that officers "sometimes" speed, Mr. Cracraft's belief, without any supporting factual allegations, does not properly plead a widespread practice for the purpose of a *Monell* claim.

  Mr. Cracraft has also not pleaded that he satisfied the municipal action prong by either of the remaining methods. Though he states in his complaint his belief that that the Officers were implementing a policy of racial profiling, he points to no express written policy allowing racial profiling and does not argue that one exists. He also does not allege that Officers Weekley or Shaffer were among those in final policymaking authority. Mr. Cracraft has therefore failed to demonstrate that his right to be free from racial profiling can be traced to the City's actions, a necessary element of his *Monell* claim.

  With regard to Mr. Cracraft's Fourth Amendment claim, even assuming the Officers committed a constitutional violation, Mr. Cracraft does not allege in his Amended Complaint that there is any specific policy permitting unlawful restraints, any widespread practice of doing so, or that his alleged constitutional deprivation was committed by a person with final policymaking authority. Nor does he argue in his briefing that any of these are present.

### D. Count VI: False Imprisonment Claim

  As the Court has dismissed each of Mr. Cracraft's constitutional claims, only his state law claim for false imprisonment remains. The Defendants argue that the Court should decline

supplemental jurisdiction over this remaining claim because this litigation remains in the early stages. (Docket No. 35 at ECF pp. 12–13; Docket No. 49 at ECF p. 21). Mr. Cracraft does not dispute that the Court may, in its discretion, dismiss his false imprisonment claim in these circumstances. (Docket No. 50 at ECF p. 10; Docket No. 62 at ECF p. 15).

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479 (7th Cir. 2012) (cleaned up) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)); 28 U.S.C. § 1367(c). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* (internal quotation marks omitted). The Seventh Circuit has identified three exceptions "that may displace the presumption":

> (1) The statute of limitations has run on the pendent claim precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (internal citations omitted).

None of the three exceptions apply here. Regarding the first exception, the statute of limitations will not have run on Mr. Cracraft's state-law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action, except in limited circumstances not present here. *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). Second, substantial judicial resources have not been expended on the merits of the state law claims. The case remains less than one year from filing, the instant motions have been the only contested motions that the

Court has ruled on, and the Court has expended relatively minimal resources supervising the development of these claims. Third, it does not appear to the court that the proper resolution of the state law claims is so obvious as to overcome the presumption that dismissal without prejudice to be refiled in state court is appropriate. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("If the question whether a state-law claim lacks merits is not obvious, comity concerns may dictate relinquishment of jurisdiction."). The Court is inclined to relinquish its supplemental jurisdiction over the state-law claim but will not formally dismiss it without prejudice until the Court can rule on any motion for leave to amend the federal claims.

## IV. CONCLUSION

In sum, IMPD and Officer Shaffer's Motion to Dismiss (Docket No. 34) and Officer Weekley's Motion to Dismiss (Docket No. 48) are **GRANTED** to the extent that Count II (Intentional Infliction of Emotional Distress); Count III (Negligent Infliction of Emotional Distress); Count IV (Negligent Training & Supervision); and Count V (Respondeat Superior) and the official capacity claims against both Officers Weekley and Shaffer are **DISMISSED with prejudice**. (AC, ¶ 1). Count I's unlawful search and seizure, equal protection, and *Monell* claims are **DISMISSED**. These latter claims are **DISMISSED without prejudice** and with leave to file a motion for leave to file an amended complaint no later than **September 11, 2023**, if Mr. Cracraft believes an amended complaint is maintainable consistent with this opinion and Federal Rule of Civil Procedure 11. If no motion for leave to amend is filed by that date, or if any such motion is denied, the dismissal of Count I will convert to with prejudice. In view of the dismissal of all of Mr. Cracraft's federal claims, the Court is inclined to decline supplemental jurisdiction over the state law claim set out in Count VI (false imprisonment), but will not formally dismiss that claim without prejudice until it can rule on any motion for leave to amend

the federal claims. In the event that Mr. Cracraft has no viable federal claim against Defendants, Count VI will be dismissed without prejudice.

**SO ORDERED.**

Date:   8/30/2023

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Kyle Frederick Biesecker
BIESECKER DUTKANYCH & MACER, LLC
kfb@bdlegal.com

Sean Tyler Dewey
ICE MILLER LLP
sean.dewey@icemiller.com

Taylor Jon Ferguson
Biesecker Dutkanych & Macer, LLC
tferguson@bdlegal.com

Audrey K. Howard
ICE MILLER LLP (Indianapolis)
audrey.howard@icemiller.com

John P. Lowrey
City of Indianapolis
john.lowrey@indy.gov